IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2009

## LINN COOK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-23296    John T. Fowlkes, Jr., Judge**

---

**No. W2008-02068-CCA-R3-PC  -  Filed December 23, 2009**

---

The petitioner, Linn Cook, appeals the denial of his petition for post-conviction relief and argues that he received ineffective assistance of counsel at trial and that he was improperly sentenced in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). After careful review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Joseph S. Ozment, Memphis, Tennessee, for the appellant, Linn Cook.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rachel Newton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner and his twin brother were convicted of multiple offenses after a jury trial. This post-conviction appeal pertains only to Linn Cook. The facts underlying the petitioner's conviction were summarized by this court on direct appeal in *State v. Linn Cook and Glenn Cook*, No. 02C01-9712-CR-00482, 1999 Tenn. Crim. App. LEXIS 627, at ** 3-17 (Tenn. Crim. App. June 30, 1999). The petitioner and his brother were involved in an incident that resulted in the petitioner being convicted of possession of a handgun in an occupied place and of multiple counts of especially aggravated kidnapping, aggravated robbery, and attempted aggravated robbery. The petitioner and his brother approached three people as they left a party. The brothers brandished firearms, forced the victims into a car, threatened the victims, and forced them to drive to the victim's apartment. After taking jewelry and money, the petitioner and his brother left the scene. The petitioners' post-conviction proceedings occurred on January 3, 2002; May 19, 2005; February 9, 2006; and February 15, 2008. During the first post-conviction hearing, the petitioner offered no proof but informed the court of his claims for relief.

During the second post-conviction hearing, which took place on May 19, 2005, the petitioner testified that trial counsel from the office of the public defender was appointed to represent him. He testified that trial counsel met with him on three occasions, failed to file any pretrial motions, and failed to call any defense witnesses. He denied any involvement in the offenses that resulted in his convictions and said that he and his brother were "hanging out" with "ten or eleven females" on the night of the crimes. He did not provide the names of the women. He said that Tony Garrett, a witness at trial, lied during his testimony.

The petitioner said that trial counsel failed to interview and call Officer Justice D. Fox and Keisha Hare as witnesses for the defense. He testified that Officer Fox would have testified that he arrested the petitioner not for the robbery and kidnapping but in connection with shots being fired at an apartment complex. He said that Harris would have testified that the petitioner and his brother did not rob anyone.

The petitioner testified that he wanted trial counsel to file a motion to suppress the officer's testimony concerning the "shots-fired" call and the weapons found in his car during the arrest. Officer Fox retrieved two .38 caliber Smith and Wesson handguns, a Maverick pump shotgun, and some ammunition. Trial counsel did not file a motion to suppress, but the petitioner testified that she made an oral motion to limit the officer's testimony.

On cross-examination, the petitioner said that the jury heard only the State's version of events. He testified that he was sentenced as a standard offender but received a sentence in the middle of the range for especially aggravated robbery. Immediately after his conviction, he filed a complaint with the Board of Professional Responsibility against trial counsel. He later mailed a handwritten letter to trial counsel, which read as follows:

> I'm writing to apologize for my action since you were my attorney, and having had wrote to the Boards of Professionals. My personal opinion as to your qu[a]lification as an attorney, you are one of the best. I've often thought of you and your friendship as well as your representation in handling my case. I still feel, that you did handle my case very well, in[]spite of the conviction. I've asked myself a thousand times over was I wrong, in my heart I feel that I was about you. You are a very nice person and I feel that you did do your best, and there was nothing that you could do about the Judge and the prosecutor action no more than what you did do, which was argue and object to their conduct[] and ruling. I want to say to you that I'm sorry and I apologize for causing this burden "un[n]e[ce]ssar[i]ly" I was wrong. I still can[']t sleep, but I do intend to str[a]ighten [this] out if any way possible. In Jesus name everything is possible. Well I was just writing you, because I was and am concerned about you. I do hope that you can forgive me within your heart and [acc]ept my apology. May God Bless you Sherry always.
>
> Sincerely yours
> Linn C. your Client

The petitioner denied writing the letter to trial counsel.

The next hearing occurred on February 9, 2006, and the post-conviction court granted the petitioner's request to relieve post-conviction counsel.

The final hearing occurred on February 15, 2008, and the petitioner again testified that trial counsel should have called Officer Fox to testify to impeach the other witnesses. Officer Fox testified that he assisted in the petitioner's arrest for a shots-fired call and was unaware of the petitioner's connection to the underlying crimes.

The petitioner testified that trial counsel was unable to locate anyone who witnessed the robbery and kidnapping. He again stated that he was innocent. On cross-examination, he admitted that he did not provide the names of any alibi witnesses to trial counsel. He also acknowledged that he wrote a letter to trial counsel telling her she did a good job and apologizing for the trouble he caused her.

Trial counsel testified that she has been employed with the Shelby County Public Defender's office for twenty-three and a half years and had tried between twenty-five and fifty criminal cases. She represented the petitioner at trial. She testified that the petitioner never mentioned Keisha Hare as a witness and that there was no mention of her in the case file. The first mention of her name was at trial when a victim testified that they left Hare's house when they were confronted by the petitioner and his brother.

Trial counsel testified that she does not always file a discovery motion and that such a decision is dependent on the actions of the State. She recalled that, before trial, she made an oral motion in limine regarding the shots-fired call because the petitioner did not want the officers to testify that they first came into contact with him in connection with another unrelated crime. The petitioner believed that such information would be prejudicial and irrelevant to his case. The trial judge denied the motion, but counsel made a continuing objection throughout the trial so the issue would be preserved. Trial counsel stated that this court found, on direct appeal, that the trial court did not err by allowing the State to introduce testimony about the shots-fired call when they arrested the petitioner. She said that the petitioner denied there was a kidnapping. He told her he confronted one of the victims because he borrowed a gun from the petitioner and did not return it. The defense theory was that the petitioner and his brother knew the victim and were trying to retrieve their gun. Trial counsel tried to locate three people who worked at the pawnshop where the petitioner and victim went on the day of the crimes. She located one of the potential witnesses, but her statement did not help the defense. Trial counsel recalled that, at trial, the victim abandoned his earlier position that he did not know the petitioner. She said that the victims did not want to talk to her or her investigator.

The post-conviction court denied the petition for relief and specifically noted the letter sent by the petitioner to trial counsel as evidence that she did "an excellent job defending Mr. Cook." The post-conviction court held that the petitioner failed to demonstrate that he would have received

a different outcome at trial had other evidence been presented. The court also determined that the petitioner failed to establish that not calling a witness at trial was prejudicial to his case.

Analysis

On appeal, the petitioner argues that counsel rendered ineffective assistance when she failed to interview and call witnesses, failed to file a discovery motion, failed to locate the dispatch tape, and failed to see him more than three times prior to trial.

This court reviews a claim of ineffective assistance of counsel under the standards of *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975), and *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the petitioner so as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. *Goad*, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *State v. Honeycutt*, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002) (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997); *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

With regard to his first issue, the failure to interview and call two witnesses at trial, the petitioner failed to call these witnesses at the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these

witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. *Black*, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Id.* Apart from his own testimony, the petitioner offered no evidence that the testimony would have undermined confidence in the outcome of the trial. The petitioner cannot simply argue that trial counsel was ineffective for not calling certain witnesses and then fail to call the same witnesses during the hearing on the petition for post-conviction relief.

Next, the petitioner argues that counsel was ineffective because she failed to file a discovery motion and failed to suppress certain evidence. This court determined on direct appeal that the "shots fired" evidence and testimony were not prejudicial. Trial counsel did make an oral motion in limine regarding the "shots fired" call, but her motion was overruled. Trial counsel testified that she does not always file a motion for discovery as part of her trial strategy but relies on the State's actions before filing a motion. The petitioner has failed to demonstrate that trial counsel's decision not to file the motion for discovery caused him prejudice.

The petitioner also argues that trial counsel did not meet with him sufficiently to establish effective counsel. Specifically, he contends that, prior to trial, counsel met with him on just three occasions. Trial counsel testified that she met with the petitioner several times. The post-conviction court specifically accredited the testimony of counsel. The petitioner has not met his burden of demonstrating that counsel was deficient or that he was prejudiced by their meetings.

Next, the petitioner argues that he was sentenced improperly. He argues that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), because the trial court enhanced his sentence. We conclude that the petitioner's claim must fail even if a *Blakely* violation occurred. This court previously held that *Blakely* does not apply retroactively to cases on collateral appeal. *See Billy Merle Meeks v. Ricky J. Bell, Warden*, No. M2005-00626-CCA-R3-HC, 2007 Tenn. Crim. App. LEXIS 962, at *17 (Tenn. Crim. App. at Nashville, Nov. 13, 2007). This court, in the unreported decision of *Meeks v. Bell*, concluded that the weight of authority stemming from *Cunningham v. California*, 549 U.S. ___, 127 S. Ct. 856 (2007), *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), and its progeny are contrary to the petitioner's assertions which are mirrored here by the petitioner. As to the retroactive application of *Blakely*, we conclude, as did the court in *Meeks*, that the holdings of *Blakely* are not to be applied retroactively. *Meeks*, No. M2005-00626-CCA-R3-HC, 2007 Tenn. Crim. App. LEXIS 962, at *19. Additionally, this court has previously held that *Blakely* does not apply retroactively to cases on collateral appeal in the post-conviction setting. *See Timothy R. Bowles v. State*, No. M2006-01685-CCA-R3-HC, 2007 Tenn. Crim. App. LEXIS 355, at **7-8 (Tenn. Crim. App. at Nashville, May 1, 2007); *Carl Johnson v. State*, No. W2003-02760-CCA-R3-PC, 2005 Tenn. Crim. App. LEXIS 65, at **11-12 (Tenn. Crim. App. at Jackson, Jan. 25, 2005). Therefore, the petitioner is not entitled to any relief on this issue.

Further, all the petitioner's sentences were run concurrently with the longest sentence set at twenty years for the Class A felony of especially aggravated kidnapping. The petitioner committed the offenses on April 14, 1996, prior to the 2005 amendment to the 1989 Sentencing Act. Prior to the 2005 amendment, a standard offender convicted of a Class A felony was subject to a sentencing range of fifteen to twenty-five years. *See* T.C.A. § 40-35-112(a)(1) (1996). The presumptive sentence for a Class A felony was the "midpoint of the range if there are no enhancement or mitigating factors." T.C.A. § 40-35-210(c) (1996). The midpoint of the sentencing range for a standard offender convicted of especially aggravated robbery, as here, was twenty years. The petitioner's sentence was not increased based on facts neither admitted by him nor found by a jury. The trial court's sentencing did not violate *Blakely* or its progeny. Therefore, it was proper for the post-conviction court to deny relief.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE